## JOY et al. v. WINDER.

### No. 1229.

Circuit Court of Appeals, Tenth Circuit.

June 26, 1935.

Jim Hatcher, of Chickasha, Okl. (Hatcher & Bond and Reford Bond, Jr., all of Chickasha, Okl., on the brief), for appellants.

A. L. Morrison, of El Reno, Okl. (Morrison, Morrison & Morrison, of El Reno, Okl., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Joy and Nelson have appealed from a judgment for personal injuries recovered against them by Mrs. Winder, plaintiff below. The sole question presented is the sufficiency of the evidence to support the verdict. In passing upon that question we must view the evidence in a light most favorable to plaintiff. Pennsylvania Steel Co. v. Jacobsen (C. C. A. 2) 157 F. 656, 657; Cincinnati, N. O. & T. P. R. Co. v. Tharp (C. C. A. 6) 223 F. 615, 616.

The facts are these: Joy owned and operated three cotton compresses in Oklahoma. One Litchfield was the manager and in charge of one located at Chickasha. Nelson was employed as a night watchman at the Chickasha compress.

Nelson had been shooting at rabbits on the compress grounds prior to December 8, 1931. On that date, shortly after 5 o'clock in the morning, Nelson fired two shots at a rabbit on the compress grounds from a .38 caliber Colts Special pistol. The shots were fired in the direction of plaintiff's home, and from a point 950 feet easterly therefrom. Several persons heard two shots fired, but heard no other shots that morning. One witness saw Nelson fire the two shots and saw the second shot strike the ground near the rabbit. The first shot was evidently fired when the muzzle of the pistol was elevated, that is, when it was being held at an angle above the horizontal, because one Boston, who lived one block west of the compress grounds, heard the shots and the sound of the bullet from the first shot as it passed through the air past his house.

At approximately the same time that Nelson fired the shots, a .38 caliber bullet passed through the screen on the window of plaintiff's bedroom, through the bony structure about her left eye, and lodged in her left eyeball, necessitating the removal of her left eye, and greatly impairing the vision of her right eye. Plaintiff heard two shots fired just before the bullet struck her eye.

A bullet fired from the pistol while it was being held on a level, would not have carried 950 feet; neither would a ricocheted bullet fired from the pistol have carried that far. Had the muzzle been sufficiently elevated, the bullet would have carried a distance of about 1,200 feet. There were buildings between where Nelson stood and plaintiff's home, which would have intercepted the course of the bullet, unless the muzzle of the pistol was elevated sufficiently to give the bullet a trajectory above the buildings.

Clover, rosebushes, and shrubs were growing on the compress grounds. It was Nelson's duty to guard the property. Shortly after the accident, plaintiff's son told Litchfield that Nelson had shot a rabbit and that the shot had struck plaintiff in the eye. Litchfield replied, "Well, I am sorry but we wanted rabbits killed."

Nelson admitted he fired two shots with a .38 caliber revolver. At about that time a .38 caliber bullet struck plaintiff's eye. Several persons heard the shots fired by Nelson. One saw Nelson shoot, but saw only one shot strike the ground. The bullet from the first shot was heard by Boston as it passed his house. With the muzzle of the pistol elevated when fired, a bullet therefrom would have carried from the place where Nelson fired to plaintiff's home. No other person was seen or heard shooting in the vicinity of plaintiff's home that morning.

These facts, in our opinion, warranted the jury in finding that the bullet from the first shot fired by Nelson struck plaintiff's eye.

It was Nelson's duty to watch and safeguard the compress property. Rabbits are destructive of shrubs. Litchfield ad-

mitted they wanted the rabbits killed. These facts warranted the jury in finding that Nelson was acting within the scope of his duties when he fired the shots at the rabbit.

■ Shooting at an elevation in the direction of an occupied residence was clearly a negligent act.

The judgment is affirmed.